DANA CEPHAS, Bar No. 181847
CEPHAS LAW FIRM
1901 Avenue of the Stars, Suite 200
Los Angeles, California 90067
Telephone:      (310) 461-1441
Facsimile:      (310) 499-7010

Attorneys for Defendant
RAUL PRIETO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ARMANDO BARAJAS, et al.,<br>RAUL PRIETO (29),<br><br>    Defendant. | NO. CR 10-00351-ODW-(29)<br><br>DEFENDANT RAUL PRIETO'S SUPPLEMENTAL REQUEST AND ARGUMENTS FOR SUPPRESSION OF EVIDENCE FROM THE WIRETAP OF TARGET TELEPHONE #9, OR FOR A FRANKS HEARING, IN SUPPORT OF HIS PREVIOUSLY FILED JOINDER TO CO-DEFENDANT JESSICA MEDINA'S MOTION TO SUPPRESS WIRETAP EVIDENCE; DECLARATION OF DANA CEPHAS; DECLARATION OF RAUL PRIETO<br><br>Hearing Date: September 11, 2012<br>Hearing Time: 10:00 a.m.<br><br>Trial Date: November 6, 2012 |

**RAUL PRIETO'S SUPPLEMENTAL REQUEST FOR SUPPRESSION OR FOR A FRANKS HEARING**

TO:   UNITED STATES ATTORNEY ANDRE BIROTTE, JR. AND ASSISTANT UNITED STATES ATTORNEY REEMA EL-AMAMY.

PLEASE TAKE NOTICE that Defendant RAUL PRIETO, by and through his attorney of record Dana Cephas, hereby submits this supplemental request and arguments for suppression of illegally obtained wiretap evidence or for an evidentiary hearing (*i.e*., a hearing pursuant to the holding in *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)), in conjunction with his previously filed joinder in co-defendant Jessica Medina's Motion for suppression of wiretap evidence (related to lack of necessity for a wiretap of target telephone #9 that was allegedly used by a co-defendant), at Docket No. 1590, that is currently scheduled to be heard on September 11, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Otis D. Wright, United States District Judge. Specifically, Mr. Prieto requests that the Court suppress all evidence obtained from target telephone #9, or order a *Franks* Hearing in the event the Court does not conclude that the motion to suppress should be granted.

This request is based on the attached memorandum, the attached declarations, and such other papers and pleadings submitted by co-defendants in the above-captioned case.

Dated:  August 5, 2012          CEPHAS LAW FIRM


                                By:  *Dana Cephas*
                                     Dana Cephas

                                Attorneys for Defendant
                                RAUL PRIETO

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Raul Prieto ("Prieto") previously joined the motion to suppress filed by defendant Jessica Medina – because the Government intercepted and recorded a conversation between Mr. Prieto and a co-defendant ("RIVERA") on target telephone #9 (the telephone that is the subject of Ms. Medina's motion).

One reason for this supplemental filing is to direct the Court's attention to arguments and exhibits that are relevant to the Court's determination of Ms. Medina' motion for suppression or the alternative request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

Mr. Prieto also filed this supplemental pleading to address an additional argument requiring suppression of the wiretap at issue; namely, the Government's failure to obtain authorization (from the Department of Justice) to intercept communications of the individual (RIVERA) who was using target telephone #9.

## II.    MS. MEDINA' MOTION SHOULD BE GRANTED BECAUSE SEVERAL DOCUMENTS DEMONSTRATE THE GOVERNMENT FAILED TO EMPLOY TRADITIONAL INVESTIGATIVE METHODS FOR A REASONABLE (OR ANY) PERIOD OF TIME PRIOR TO CLAIMING NECESSITY TO WIRETAP TARGET TELEPHONE #9

The Government's application to wiretap target telephone #9 confirms that reviewing several days of phone records is the **only** investigative method it used with respect to Carlos RIVERA – the person allegedly using target telephone #9 – after the Government determined RIVERA was the person using that telephone.

### A.    The Government Claimed Necessity For A Wiretap After Intercepting Only Four Calls To/From Target Telephone #9 During The Preceding Two-Months.

The Government's application reveals that during two months of wiretaps of target telephone #5 – used by an individual named David NAVARRO – the

Government intercepted four solitary telephone calls to or from target telephone #9. (*See* Affidavit of Kris Lavoie at pp. 53-56 attached to Government Wiretap Application lodged as Exhibit A by Ms. Medina in support of her motion; hereinafter "Lavoie Affidavit.")  Significantly, two calls were made from target telephone #5 to target telephone #9 (on May 16, 2009 and July 8, 2009), while two calls were made from target telephone #9 to target telephone #5 (on May 26, 2009 and June 26, 2009).  (Lavoie Affidavit at pp. 53-56.)

Despite the fact that the Government was aware of **only four telephone calls to/from target telephone #9 during a two-month period**, the Government claimed "necessity" for wiretapping that telephone.  Four telephone conversations between NAVARRO and RIVERA over a two-month period do not support the Government's contention that RIVERA was a critical cog in the investigation of this case.  Thus, there was no necessity to wiretap the telephone used by RIVERA.

**B.     After The Government Identified RIVERA As The User Of Target Telephone #9, It Never Made Any Effort To Conduct Surveillance of RIVERA.**

While conducting surveillance of NAVARRO (the person attributed to target telephone #5) on July 3, 2009, Government agents observed and subsequently identified RIVERA as the person using target telephone #9.  (Lavoie Affidavit at pp. 68-71.)  That surveillance of NAVARRO was then included in the wiretap application as a purported example of the Government's efforts to use surveillance with respect to the user of target telephone #9 – *i.e.*, RIVERA.  (*Id*.)  Significantly, the Government contends that its agents decided to conduct surveillance of NAVARRO on that date "[i]n an attempt to identify RIVERA;" *i.e.*, the person speaking to NAVARRO from target telephone #9.  (Lavoie Affidavit at p. 68.)  However, once the agents "were able to positively identify RIVERA . . . surveillance was terminated."  (Lavoie Affidavit at p. 71.)  Surprisingly, the Government made no efforts to conduct surveillance on Rivera after they confirmed his identity.  (*See*

Lavoie Affidavit at pp. 63-73.)  Having finally identified the person who made four calls to target telephone #5 during the preceding two-month period, the Government should have attempted to employ surveillance of that person (RIVERA) to determine how relevant he was to the investigation.  The Government should not have immediately sought to wiretap RIVERA.

C.  **Once The Government Identified RIVERA As The User Of Target Telephone #9, The <u>Only</u> Investigative Method Used Was To Review Three Weeks Of Telephone Records For That Telephone.**

As explained above, the Government admitted that it learned the identity of RIVERA on July 3, 2009, while conducting surveillance of NAVARRO.  Four days later, on July 7, 2009, a Government agent examined three weeks of telephone records for target telephone #9, to see what numbers had been called.  (Lavoie Affidavit at p. 60.)  The Government's wiretap application does not identify any other investigative method with respect to RIVERA – the user of target telephone #9. (*See* Lavoie Affidavit generally.)

D.  **The Government Should Have Tried A Pen Register Or Trap And Trace Device – As Other Law Enforcement Agencies Investigating The Black Angels Did – Before Claiming Necessity For A Wiretap.**

After the Government identified RIVERA as the user of target telephone #9, it could have applied for a pen register or trap and trace device – and utilized those tools for a reasonable period of time.  At least one law enforcement agency investigating the Black Angels gang recognized the usefulness of these methods.  Specifically, while investigating an alleged murder of a Black Angel gang member, San Bernardino police applied for a pen register or trap and trace device, without automatically resorting to a wiretap.  (*See* Request for Pen Register attached as Exhibit A – and produced by the Government in discovery.)  The Government should have similarly sought to utilize a pen register or trap and trace device for RIVERA's telephone before claiming "necessity" for a wiretap.

**E.**    **The Government Should Have Sought An Order Authorizing Access To GPS Coordinates For Target Telephone #9 And Assessed The Results – Before Claiming Necessity For A Wiretap.**

Instead of seeking a wiretap, the Government could have sought a Court order authorizing access to GPS information that might have shown where RIVERA had been or where he was going.  Indeed, the law enforcement agency identified in Exhibit A (above) received correspondence from Sprint explaining its ability to provide "GPS Coordinates or Precision Location Information . . . in real time" and cell cite locations "for the past 45 days" pursuant to a court order.  (*See* Letter from Sprint attached as Exhibit B – and produced by the Government in discovery.)

Significantly, the Government's wiretap application for target telephone #9 reveals it had utilized GPS requests for telephones of co-conspirators.  For example, a Government agent "submitted a court authorized GPS precision location request of Target Telephone #5, which located the telephone" on May 26, 2009.  (Lavoie Affidavit at p. 54-55.)  The same wiretap application reveals that another "court authorized GPS precision location request revealed" the location of NAVARRO and target telephone #5 on July 3, 2009.  (Lavoie Affidavit at p. 68.)  The Government should have similarly requested GPS information for RIVERA's telephone before claiming necessity for a wiretap order.

**F.**    **The Government Should Have Employed A Parole Search Of RIVERA – Before Claiming Necessity For A Wiretap.**

At the time it submitted a wiretap application, the Government knew (or should have known) RIVERA was on parole.  (*See* Lavoie Affidavit at p. 71, and Page 1 of DEA Report of Investigation, attached as Exhibit 1 to Ms. Medina's suppression motion.)  Moreover, when RIVERA was eventually arrested in this case, it was based on possession of methamphetamine found during "a parole compliance check at RIVERA's residence."  (*See* Page 1 of DEA Report of Investigation, attached as Exhibit 1 to Ms. Medina's suppression motion.)

Significantly, at the time it sought the wiretap application, the Government did not inform the Court that Rivera was subject to parole searches. (*See* Lavoie Affidavit.)  Moreover, the Government falsely suggested that conducting a search prior to the end of the investigation would "cause the Target Subjects to discontinue using the Target Telephones" and thereby jeopardize the investigation. (Lavoie Affidavit at p. 79.)  However, the conduct of the Government agents, who routinely conducted searches without arresting the targets, reveals Government agents actually believed suspects in the investigation would continue to use target telephones as long as the suspects were not arrested during such searches.

An illustrative example of is presented by the Government's decision to send a large team of at least ten officers/agents to conduct a raid on RIVERA less than four days after the wiretap of target telephone #9 was approved. (*See* DEA Report of Investigation attached as Exhibit C.)  The raid on RIVERA was based on the Government's belief, from intercepting telephone calls, that RIVERA had just agreed to purchase a handgun. (*Id*. at p. 1.)  Although the Government secured the handgun during the raid, the agents released RIVERA without arresting him so the Government could continue to monitor his telephone. (*Id*. at pp. 7-8, 10.)

The Government's wiretap application contained the false claim that this type of raid would "prematurely" notify suspects they were being investigated and cause the suspects to "discontinue using the Target Telephones." (Lavoie Affidavit at 79.)  If the Government believed sending ten or more officers on a raid of RIVERA would not cause him to stop using target telephone number #9, the use of a routine parole search of RIVERA's residence can hardly be the basis for claiming such a search might have caused RIVERA to believe he was under investigation.

Thus, it is clear that the Government could have and should have engaged in a number of traditional investigative methods – and given these methods a chance to bear fruit – **before claiming necessity to wiretap a telephone that had been intercepted only four times during the two previous months**.

**III.   THE MOTION TO SUPPRESS EVIDENCE FROM THE WIRETAP OF TARGET TELEPHONE #9 SHOULD BE GRANTED BECAUSE THE GOVERNMENT APPARENTLY FAILED TO SEEK, AND DEFINITELY FAILED TO OBTAIN, DOJ AUTHORIZATION TO INTERCEPT "RIVERA'S" COMMUNICATIONS**

As this Court knows, local officials must obtain the authority of certain officials in the Department of Justice ("DOJ") before asking a court to authorize a wiretap order.  *See* 18 U.S.C. § 2516.  "The Act plainly calls for the prior, ***informed judgment*** of enforcement officers desiring court approval for intercept authority, and investigative personnel may not themselves ask a judge for authority to wiretap or eavesdrop."  *United States v. Giordano*, 416 U.S. 505, 515 (U.S. 1974) (emphasis added).  The Supreme Cout explained that "[t]he mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order."  *Id*. at 515-516.

It goes without saying that the local Assistant United States Attorney who prepares a request for a wiretap order should provide the DOJ official with any relevant information that might cause DOJ to approve or deny a particular request. Moreover, Congress has made it clear that "[e]ach application for an order authorizing or approving the interception of a wire, oral, or electronic communication . . . shall include the following information: . . . [b](iv) ***the identity of the person, if known***, committing the offense and whose communications are to be intercepted."  18 U.S.C. § 2518(1) (emphasis added).

Based on the wiretap application submitted by the Government for target telephone #9, there is no doubt that **the Government knew the identity of RIVERA, the person using target telephone #9, prior to the date the Government obtained DOJ approval to request a judicial wiretap order**. Despite the fact that the wiretap application submitted to the Court did identify RIVERA as using target telephone #9, both the list of "Target Subjects" in the

application and in the July 15, 2009 DOJ authorization letter fail to include any reference to RIVERA.  (*See* pages 5-6 of the Lavoie Affidavit in the wiretap application for target telephone #9 listing the "Target Subjects" that the Government intended to intercept; *see also* the July 15, 2009 authorization letter from DOJ, attached hereto as Exhibit D, listing the same list of target subjects – without any reference to RIVERA.)

Despite the fact that RIVERA's identity was confirmed on July 3, 2009, the July 15, 2009 authorization letter from DOJ only confirms that target telephone #9 was "subscribed to by Jessica Medina"; there is no reference to RIVERA.  (*See* Exhibit D.)  In contrast, when the Government sought to wiretap target telephone #5, subscribed to by "Whaterver Crazt Legs" but used by David NAVARRO, the DOJ's authorization letter referred to "Whaterver Crazt Legs" as the subscriber, but the letter also specifically included NAVARRO as one of the target subjects.  (*See* DOJ's April 28, 2009 authorization letter for target telephone #5, attached as Exhibit E; and *see also* page 6 of the Lavoie Affidavit identifying the telephone subscribed to by "Whaterver Crazt Legs" as target telephone #5.)

Four distinct possibilities come to mind as to the reasons why RIVERA was not included in the July 15, 2009 DOJ authorization letter.

First, the Government's request to intercept RIVERA may have been intentionally rejected by DOJ due to DOJ's belief that the Government should have spent a reasonable amount of time utilizing traditional investigative methods and assessing the results (including but not limited to parole searches or surveillance of RIVERA) prior to claiming "necessity" to intercept RIVERA's communications.

Second, the Government's request for DOJ authorization may have been submitted to DOJ before RIVERA was identified as the person using target telephone #9 (RIVERA was allegedly identified on July 3, 2009).[1]

---

[1]  The Government has repeatedly refused Mr. Prieto's request to provide documentary evidence (for example, an email or transmittal letter) that would reveal when the Government submitted its wiretap request to DOJ.  (Cephas Decl., ¶ 3.)

Third, the Government may have intentionally concealed RIVERA's name from the list of "Target Subjects" in the request for DOJ authorization for fear that DOJ would have denied the request and encouraged the Government to first attempt traditional investigative methods for a reasonable period of time.

Finally, the Government may have been reckless in preparing the documents that were sent to DOJ by (1) inadvertently omitting RIVERA as a "Target Subject" of the investigation; and/or (2) failing to inform DOJ that the user of target telephone #9 had been positively identified.

It does not matter what the actual reason was.  The Government's failure to seek or obtain the specific authorization from DOJ to intercept the communications of RIVERA (a person whose identity was known before DOJ gave the authorization) makes the subsequent wiretap order fatally flawed and requires suppression of all communications from target telephone #9.

## III.    THE DEFENDANTS ARE ENTITLED TO A FRANKS HEARING

"A criminal defendant is entitled to a hearing to test the veracity of an affidavit supporting the [wiretap] application under *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), if he can make a substantial preliminary showing that the affidavit contained intentionally or recklessly false statements, and that the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995) (Internal quotations and citations omitted).  "*Franks* applies to omissions as well as false statements." *Id.*

In this case, there is no doubt Mr. Prieto and Ms. Medina have made a "substantial preliminary showing" that the Government's affidavit contained intentionally or recklessly false statements, as well as material omissions of relevant information.  For example (as explained by Ms. Medina), the affidavit falsely suggested it could not engage in trash searches because the Government did not know where Mr. Rivera lived.  The Government's wiretap application also reveals

that the judicial officer was not told RIVERA was on parole – and therefore subject to routine parole searches during the relevant timeframe.  In addition, as demonstrated above, the affidavit recklessly suggested that surveillance and searches would not be useful (or would harm the investigation by letting suspects know they were under investigation), despite the fact that such methods had been repeatedly employed (successfully) during the Government's investigation of the Black Angels gang.

Without the false statements or the material omissions in the wiretap application, the Government's already facially inadequate application would not have come close to providing necessity for a wiretap.  Thus, if this Court does not simply grant the motion to suppress, it should order a *Franks* hearing to permit Mr. Prieto and Ms. Medina to fully demonstrate the inadequacy of the Government's application.

**IV.    CONCLUSION**

For the reasons set forth above, this Court should grant the motion to suppress all evidence derived from the wiretap of target telephone #9, including but not limited to the purported conversation between a co-defendant and Raul Prieto that is set forth in Overt Act 99 on page 26 of the Indictment.  Alternatively, this Court should grant the request for a *Franks* hearing to evaluate the adequacy of the Government's wiretap application with respect to target telephone #9.

Dated:  August 5, 2012                    CEPHAS LAW FIRM


                                          By:___*Dana Cephas*_____
                                              Dana Cephas

                                          Attorneys for Defendant
                                          RAUL PRIETO

### DECLARATION OF DANA CEPHAS

I, DANA CEPHAS declare and state as follows:

1.      I am a CJA attorney and have been appointed to represent Defendant Raul Prieto in the above-captioned case.  I have personal knowledge of the facts set forth below, and if called to testify, would testify competently as to the matters contained herein.

2.      As stated in my declaration, that was filed with Mr. Prieto's original joinder to Ms. Medina's suppression motion, I reviewed the motion to suppress wiretap evidence filed on behalf of defendant Jessica Medina, and determined that Mr. Prieto should join in and incorporate the arguments in that motion because my review of the discovery in this case confirmed that my client was captured in at least one wiretap conversation on the targeted telephone that is the subject of Ms. Medina's motion.  The substance of that conversation is set forth in Overt Act 99 on page 26 of the Indictment.  Accordingly, my client has standing to join Ms. Medina's motion. On today's date, Mr. Prieto reauthorized me to submit the electronic signature on his attached declaration.  The main purpose of this second filing is to present additional arguments in support of the suppression motion/joinder, and make it clear that the Court should order a *Franks* hearing if it did not simply grant the suppression motion.

3.      Prior to filing this supplemental pleading, I contacted AUSA Reema El-Amamy and asked her to provide me with a copy of the request the Government sent to DOJ for authorization to wiretap target telephone #9.  Ms. El-Amamy claimed there was no separate written request; she claimed that instead of sending a written request, the Government submitted a draft of the wiretap application to DOJ.  Thus, I asked her to provide me with an email, transmittal letter or something else that would document the date the Government submitted its draft application to DOJ.  I informed her that the information was relevant to the wiretap request, and that I was planning on filing a pleading related to that request, but she refused to provide the information.

4.      Attached as Exhibit A, is a true and correct copy of an application for an

Cephas Law Firm
1910 Avenue of the Stars
Suite 200
Los Angeles, CA 90067
310-461-1441

DECLARATION OF COUNSEL

1   order authorizing the use of a pen register or trap and trace device, submitted by law
2   enforcement authorities who were investigating a crime allegedly perpetrated by the
3   Black Angels.  This document was produced by the Government in discovery.

4       5.      Attached as Exhibit B, is a true and correct copy of a September 2009
5   letter from an official at Sprint informing law enforcement of the company's ability to
6   use GPS to monitor the location of a mobile telephone.  This document was produced
7   by the Government in discovery.

8       6.      Attached as Exhibit C, is a true and correct copy of a DEA Report of
9   Investigation concerning a law enforcement raid on RIVERA that occurred in July
10  2009.

11      7.      Attached as Exhibit D, is a true and correct copy of a DOJ authorization
12  letter (for target telephone #9, among others) dated July 15, 2009.

13      8.      Attached as Exhibit E, is a true and correct copy of a DOJ authorization
14  letter (for target telephone #5, among others) dated April 28, 2009.

15      I declare, under penalty of perjury under the laws of the United States and the
16  state of California, that the foregoing is true and correct.

17      Signed this 5th day of August, 2012, at Los Angeles, California.

18

19                                          _Dana Cephas_
20                                          DANA CEPHAS

21

22

23

24

25

26

27

28

McGuireWoods LLP
1170 Peachtree St. NE
Suite 2100
Atlanta, Georgia 30309
404-443-5500

-2-

**DECLARATION IN SUPPORT OF SUPPLEMENTAL REQUEST FOR SUPPRESSION**

## <u>DECLARATION OF RAUL PRIETO</u>

I, RAUL PRIETO declare and state as follows:

1.      I am a defendant in this action.  I make this declaration under the compulsion of Local Criminal Rule 12-1.1, and based on my understanding of relevant law as set forth in *Simmons v. United States*, 390 U.S. 377, 394 (1968), which held that when a defendant testifies in support of a motion to suppress evidence, his testimony may not thereafter be admitted against him at trial.  I have personal knowledge of the facts set forth below, and if called to testify, would testify competently as to the matters contained herein.

2.      I have reviewed the indictment and some of the discovery produced by the Government in this matter and based on my review of those materials, I believe that law enforcement officers (and/or their agents) working on this case intercepted and recorded at least one telephone call that I received from the targeted telephone (that is the focus of Ms. Medina's motion) identified in one of the wiretap applications and wiretap orders related to this case. The substance of that call (which purports to summarize a conversation between myself and co-defendant RIVERA on or about August 6, 2009) is set forth in Overt Act 99 on page 26 of the Indictment.

I declare, under penalty of perjury under the laws of the United States and the state of California, that the foregoing is true and correct.

Signed this 5th day of August, 2012, at Ontario, California.


_____/s/_____
RAUL PRIETO

McGuireWoods LLP
1170 Peachtree St. NE
Suite 2100
Atlanta, Georgia 30309
404-443-5500

-3-

**DECLARATION IN SUPPORT OF SUPPLEMENTAL REQUEST FOR SUPPRESSION**