# REPORT OF INVESTIGATION

Page 1 of 10

| Program Code | 2. Cross File | Related Files | 3. File No. R1-08-0451 | 4. G-DEP Identifier YGH1C |
|---|---|---|---|---|
| 5. By: Kris M Lavoie, TFO  At: | ☐ ☐ ☐ | | 6. File Title MISQUEZ, SARA | |
| 7. ☐ Closed  ☐ Requested Action Completed  ☐ Action Requested By: | ☐ ☐ | | 8. Date Prepared 07-23-2009 | |

9. Other Officers:

10. Report Re: Surveillance of Carlos RIVERA at 642 East E Street, Ontario, California, and Seizure of .38 Cal. Handgun

## SYNOPSIS

1. On July 21, 2009, Carlos RIVERA aka "chino", brokered a deal with David HERNANDEZ (D. HERNANDEZ) to purchase a handgun. On July 22, 2009, surveillance was established on RIVERA at 642 East E Street, Ontario, California. Based on information learned from surveillance units and intercepted calls, TFO Kris Lavoie believed the handgun arrived at the surveillance location. Law Enforcement contacted RIVERA and D. HERNANDEZ and recovered a loaded .38 Caliber revolver reference Ontario Police Department case # 090701492.

## DETAILS

1. On July 17, 2009, at approximately 1:45 p.m., United States District Court Judge Manuel L. Real of the Central District of California, signed court order 09-0038(D)-R, authorizing the interception of wire communication for Target Telephone #5 (TT#5) (909) 489-8277, a Sprint/Nextel cellular telephone primarily used by David NAVARRO, aka "Plucky", Target Telephone #7 (TT#6) (909) 545-1313, a Metro PCS cellular telephone primarily used by Daniel REYES, aka "Sugar", Target Telephone #8 (TT#8) (909) 319-2187, a T-Mobile cellular telephone primarily used by Jose LNU, and Target Telephone #9 (TT#9) (909) 419-9937, a Sprint/Nextel cellular telephone primarily used by Carlos RIVERA, aka "Chino".

On July 21, 2009, at approximately 1950 hrs, RIVERA, TT #9, completed an outgoing call to telephone number (909) 218-0852. The caller was later identified as D. HERNANDEZ. During the conversation, RIVERA asked what D.

| 11. Distribution: Division  District  Other | 12. Signature (Agent) Kris M Lavoie | 13. Date 07-23-2009 |
|---|---|---|
| | 14. Approved (Name and Title) Kevin R Devey, GS | 15. Date 07-23-2009 |

DEA Form - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. R1-08-0451 | 2. G-DEP Identifier YGH1C |
|---|---|---|
| *(Continuation)* | 3. File Title MISQUEZ, SARA | |
| 4. Page 2 of 10 | | |
| 5. Program Code | 6. Date Prepared 07-23-2009 | |

HERNANDEZ was doing. D. HERNANDEZ said he was talking with the "homies" (Gang members). RIVERA asked if he (D. HERNANDEZ) had the "brand new" (Referring to a firearm). D. HERNANDEZ said he had it (Firearm) and it was good. RIVERA asked D. HERNANDEZ if he wanted two for it (Possibly 200 dollars for the firearm). D. HERNANDEZ said 250 (250 dollars), adding that he (D. HERNANDEZ) had a case for it (Firearm) and a holster that was already loaded (Referring to the firearm is loaded with ammunition). RIVERA said he wanted it (Firearm). D. HERNANDEZ asked by when. RIVERA said for tomorrow (07-22-09) and asked if he would hold it (Firearm). D. HERNANDEZ said yes. RIVERA asked D. HERNANDEZ if it was his. D. HERNANDEZ said yes. RIVERA told D. HERNANDEZ to hold it until tomorrow once he (D. HERNANDEZ) got out of work. D. HERNANDEZ said for sure. RIVERA said because he had just got back to the pad (RIVERA'S residence). RIVERA told D. HERNANDEZ not to sell it because he needed it. D. HERNANDEZ said if he got a ride, he would go show it to RIVERA. RIVERA told D. HERNANDEZ not to trip, that he believed him. The call was terminated.

Based on my training and experience and knowledge of the investigation, TFO Kris Lavoie believes RIVERA negotiated with D. HERNANDEZ to purchase a .38 caliber handgun for $250 dollars. D. HERNANDEZ told RIVERA the handgun was loaded in a holster and case. RIVERA agreed to the transaction and they agreed to meet on July 22, 2009.

On July 21, 2009, at approximately 2034 hrs, RIVERA, TT #9, completed an outgoing call to D. HERNANDEZ on telephone number (909) 218-0852. D. HERNANDEZ asked what was cracking. RIVERA said he had the money (Monies to purchase the firearm) right now but he had just got home. D. HERNANDEZ asked if he wanted it (Firearm) today or tomorrow. RIVERA said it did not matter, and the reason RIVERA told him tomorrow was because he got home and RIVERA did not want that shit (Referring to the firearm) right here (RIVERA'S residence). RIVERA added he was on parole and reiterated he had the money in his pocket right now. RIVERA asked him (D. HERNANDEZ) to send him a photo (Picture of the firearm on his cell phone). D. HERNANDEZ said he was going to send him a "pic" (Picture). RIVERA said if he could use the money today, for D. HERNANDEZ to pick it up and give him that (Firearm) tomorrow. D. HERNANDEZ said alright. D. HERNANDEZ asked him to

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. R1-08-0451 | 2. G-DEP Identifier YGH1C |
|---|---|---|
| *(Continuation)* | 3. File Title MISQUEZ, SARA | |
| 4. Page 3 of 10 | | |
| 5. Program Code | 6. Date Prepared 07-23-2009 | |

call if anything and for him to send him the picture. The call was terminated.

Based on my training and experience and knowledge of the investigation, TFO Kris Lavoie believes RIVERA advised D. HERNANDEZ he had the money to purchase the handgun.

On July 21, 2009, at approximately 2039 hrs, RIVERA, TT #9, received an incoming call from D. HERNANDEZ on telephone number (909) 218-0852. During the conversation, RIVERA asked if D. HERNANDEZ got that shit (Referring to a firearm). D. HERNANDEZ said yes and said the shit was not that big referring to the size of the firearm. D. HERNANDEZ said it was a good size. RIVERA asked if it was new. D. HERNANDEZ said he got it from a home owner, a white guy. RIVERA said he had the money (Referring to having the money for the firearm) and would give it to him (D. HERNANDEZ) tomorrow. D. HERNANDEZ asked RIVERA for a call back. The call was terminated.

Based on my training and experience and knowledge of the investigation, TFO Kris Lavoie believes D. HERNANDEZ possibly obtained the handgun from a burglary of a residence.

On July 22, 2009, at approximately 1510 hrs, RIVERA, TT #9, received an incoming call from D. HERNANDEZ on telephone number (909) 218-0852. D. HERNANDEZ said he was at work. RIVERA asked what time he got off work and he (D. HERNANDEZ) replied at 4 o'clock. RIVERA asked if they were still going to do that referring to RIVERA purchasing a firearm from D. HERNANDEZ. D. HERNANDEZ said yes. RIVERA said to hit him up when he (D. HERNANDEZ) was done doing whatever he had to do so RIVERA could get that (firearm) from him. D. HERNANDEZ said alright and he (D. HERNANDEZ) would hit him up. The call was terminated.

Based on my training and experience and knowledge of the investigation, TFO Kris Lavoie believes RIVERA confirmed with D. HERNANDEZ that they were going to complete the transaction for the handgun. They agreed to talk again after D. HERNANDEZ finished work.

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION<br>*(Continuation)* | 1. File No.<br>R1-08-0451 | 2. G-DEP Identifier<br>YGH1C |
|---|---|---|
| | 3. File Title<br>MISQUEZ, SARA | |
| 4.<br>Page 4 of 10 | | |
| 5. Program Code | 6. Date Prepared<br>07-23-2009 | |

On July 22, 2009, at approximately 1530 hrs, Officers from the Ontario/Upland Narcotics Task Force (OUNTF) and the Multiple Enforcement Team (MET) established surveillance at 642 East E Street, Ontario, California, where RIVERA was believed to be located based on a GPS precision locate from the Sprint Corporation on TT #9.

On July 22, 2009, at approximately 1600 hrs, surveillance Officer Darren Williams observed RIVERA in front of the residence at 642 East E Street, Ontario, California. RIVERA had a shaved head and was wearing a black shirt, dark shorts and glasses. There were also several other male subjects standing in the front yard of the location.

On July 22, 2009, at approximately 1706 hrs, RIVERA, TT #9, received an incoming call from D. HERNANDEZ on telephone number (909) 218-0852. RIVERA asked what was up. D. HERNANDEZ asked where RIVERA was at. D. HERNADEZ asked if RIVERA wanted to do that (Purchase the firearm) and D. ERNANDEZ asked if RIVERA was around. RIVERA said yes. D. HERNANDEZ said e was on his way to Francis and Monterey (City of Ontario, California). RIVERA asked that D. HERNANDEZ call him back if D. HERNADEZ could bring it (firearm) to him. D. HERNANDEZ asked where RIVERA was at. RIVERA said he was on "E" Street and Campus Avenue (City of Ontario, California) and to call him back when D. HERNANDEZ gets a ride. D. HERNANDEZ said he would see if he (D. HERNANDEZ) could get a ride because he (D. HERNANDEZ) was on a bike. RIVERA then said he (RIVERA) did not have a ride either and that he was with two of his boys. D. HERNANDEZ said he would try to get a ride. The call was terminated.

Based on my training and experience and knowledge of the investigation, TFO Kris Lavoie believes RIVERA confirmed with D. HERNANDEZ that he (RIVERA) was at 642 East E Street, Ontario, California and requested D. HERNANDEZ bring the handgun to RIVERA'S location.

On July 22, 2009, at approximately 1728 hrs, RIVERA, TT #9, received an incoming call from D. HERNANDEZ on telephone number (909) 218-0852. D. HERNANDEZ asked if he (RIVERA) was still on Campus and "E" Street (City of Ontario). RIVERA said yeah. D. HERNANDEZ said he was on his way over there. RIVERA asked if he (D. HERNANDEZ) was on his way. RIVERA instructed D. HERNANDEZ to come out on Campus Avenue and as soon as he (D.

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| | | |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 1. File No. R1-08-0451 | 2. G-DEP Identifier YGH1C |
| | 3. File Title MISQUEZ, SARA | |
| 4. Page 5 of 10 | | |
| 5. Program Code | 6. Date Prepared 07-23-2009 | |

HERNANDEZ) passed "D" Street then the next street was going to be "E" Street and make a left. D. HERNANDEZ said alright. The call was terminated.

Based on my training and experience and knowledge of the investigation, TFO Kris Lavoie believes RIVERA gave directions to his location to complete the transaction.

On July 22, 2009, at approximately 1734 hrs, RIVERA, Target Telephone #9, received an incoming call from D. HERNANDEZ on telephone number (909) 218-0852. RIVERA asked if D. HERNANDEZ was the one in the truck. D. HERNANDEZ said yeah. RIVERA told D. HERNANDEZ to back up one more so that the "jefita"(mother) did not see. D. HERNANDEZ said alright. RIVERA told D. HERNANDEZ to back up and come by himself, adding that he (RIVERA) could see him (D. HERNANDEZ) from there, then told D. HERNANDEZ to come by himself. D. HERNANDEZ said alright. The call was terminated.

n July 22, 2009, at approximately 1734 hrs, surveillance officer Darren Williams advised a maroon Ford F-150 truck arrived at the location and a Hispanic male subject, later identified as D. HERNANDEZ, got out of the truck, removed a bicycle from the bed of the truck then walked over to the front yard with RIVERA and the other subjects. Another male subject, later identified as Daniel NAVARRO, also exited the truck with D. HERNANDEZ. The truck drove away a short time later, leaving behind D. HERNANDEZ and Daniel NAVARRO.

A short time later, surveillance officer Darren Williams observed RIVERA standing in the front yard with the other subjects and RIVERA was holding what appeared to be a small brown handgun case. Officer Darren Williams advised he could see the handgun case was partially unzipped and the inside had an off white or yellow wool lining.

Surveillance units believed RIVERA was in possession of the handgun. TFO Kris Lavoie advised the surveillance units to contact RIVERA and recover the handgun and case. Ontario Police Department marked units approached the residence at 642 East E Street. Ontario PD officer Willemstyn observed RIVERA standing with the other subjects on the east side of the front yard. RIVERA immediately broke away from the other subjects and

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION<br>*(Continuation)* | 1. File No.<br>R1-08-0451 | 2. G-DEP Identifier<br>YGH1C |
|---|---|---|
| | 3. File Title<br>MISQUEZ, SARA | |
| 4.<br>Page 6 of 10 | | |
| 5. Program Code | 6. Date Prepared<br>07-23-2009 | |

began walking westbound through the front yard, along the front of the house. RIVERA was holding something in his left hand, along his left side and was trying to conceal it from view of the officers. Officers detained four male subjects, one female subject and two small children in the front of the residence. RIVERA continued walking westbound through the front yard. Ontario PD Corporal Eric Weidner, with the OPD Air Unit advised he observed a male subject, later identified as Raul PRIETO, break away from the group and run southbound along the east side of the house then enter a back door on the south side of the house.

Officer Willemstyn was standing in the driveway, which was on the west side of the location. Officer Willemstyn ordered RIVERA to stop walking, show his hands and get on the ground, but he refused to comply. RIVERA turned left and began walking southbound on the driveway; away from officers and towards an open door on the west side of the house. RIVERA started walking southbound, officer Willemstyn saw him move the object he (RIVERA) was carrying towards the front of his body and begin carrying it with both hands. RIVERA continued to conceal the item from officers and look back over his shoulder as he quickly walked away. RIVERA then stepped onto the porch on the west side of the house, still concealing the item with both of his hands in front of him and looking back at officers. RIVERA looked back at officers one last time as he entered the house with the item he was concealing.

Officer Willemstyn advised two to three minutes elapsed and he observed Raul PRIETO exit the house through the west door, followed by RIVERA. Both subjects had their hands up and laid face down in the prone position on the driveway. At this point, Ontario Officers had six adult male subjects detained to include, RIVERA, Raul PRIETO, Jesus PRIETO, D. HERNANDEZ, Daniel NAVARRO and Francisco TOSCANO; one female subject, Jessica MEDINA; and two young children, Jayden DAVIS and Carlos RIVERA Jr. laying in the front yard.

Officers at the location were unsure where the handgun was and if there was anyone else inside of the location. Officer Willemstyn believed the handgun was now possibly inside of the house and yet he didn't know who else was inside and the location needed to be secured.

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

# REPORT OF INVESTIGATION
*(Continuation)*

| | |
|---|---|
| 1. File No. R1-08-0451 | 2. G-DEP Identifier YGH1C |
| 3. File Title MISQUEZ, SARA | |

4. Page 7 of 10

5. Program Code

6. Date Prepared 07-23-2009

The following Ontario PD personnel approached the west door of the residence: Sgt. D. Nicholson, Sgt. C. Swan, Cpl. K. Dempster, Ofc. D. Reed, Ofc. S. Shaffer, Ofc. T. Jones, Ofc. J. Burks. A small boy, later identified as Michael CAMOU, came to the door then started crying and ran back into the house. Sgt. D. Nicholson made several announcements into the house, identifying them as Ontario Police Officers and ordering anyone else inside of the location to come to the door with their hands up. There was no response from inside of the location. After making several more of the same announcements, the officers made entry to secure the location, make sure there were no other outstanding subjects inside of the location and to locate Michael CAMOU. CAMOU was located inside of a downstairs bedroom at the northeast corner of the house.

Sgt. D. Nicholson and Officer Willemstyn entered a small room to the rear of the house, which had a door leading to the backyard. Inside of the room was a washing machine, a dryer, a large stainless steel industrial size freezer and miscellaneous property on a shelf. Officer Willemstyn looked behind the washing machine and dryer and did not locate anybody hiding behind them. Officer Willemstyn looked at the stand up freezer and figured somebody could possibly hide inside of it. The freezer was approximately three feet wide, two feet deep and six feet tall. Officer Willemstyn opened the freezer to see if anyone was hiding inside of it. Officer Willemstyn advised there was nobody hiding inside of the freezer, but he did observe a small brown handgun case sitting on top of some frozen TV dinners on the top shelf. Officer Willemstyn believed based on his training and experience, this was not a common place where a gun case would be stored. The remainder of the freezer contained only frozen foods.

Sgt. D. Nicholson informed officer Willemstyn that the other officers were still searching the location and the backyard had not been secured either. Sgt. D. Nicholson told Officer Willemstyn to remove the gun case from the freezer and stay in the room with it, to make sure it was secure and nobody else could enter the rear of the house and access the gun case. Officer Willemstyn removed the gun case from the freezer and immediately noticed there was something inside of it. Officer Willemstyn manipulated the outside of the gun case with his fingers and through his training and experience he determined there was a small gun inside.

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. R1-08-0451 | 2. G-DEP Identifier YGH1C |
|---|---|---|
| *(Continuation)* | 3. File Title MISQUEZ, SARA | |
| 4. Page 8 of 10 | | |
| 5. Program Code | 6. Date Prepared 07-23-2009 | |

Officer Willemstyn unzipped the gun case. The inside of the gun case was lined with an off white or yellow wool material and there was a small blue steel revolver inside of the gun case as well. The revolver was inside of a brown leather holster with a small silver metallic clip on the side. Officer Willemstyn removed the revolver from the holster and noticed it was loaded with six bullets.

Ontario Police Forensic Technician M. Gonzales arrived at the location and took photographs of the revolver, holster and gun case. Technician M. Gonzales took photographs of all the subjects who were being detained to the front of the location.

Officer Willemstyn took possession of the revolver and secured it in the trunk of his patrol vehicle. The officers released the detained subjects.

At the Ontario Police station the revolver was booked into Ontario PD evidence. The bullets were all W-W Super .38 SPL + P. The serial number is identified as H98877. According to Ontario PD records the revolver was unregistered.

Officer Darren Williams look at the photographs that were taken of the male subjects who were detained to the front of the location, so he could try to identify the subjects he saw and what roles they played in his surveillance. Officer Willemstyn showed Officer Darren Williams the handgun case that was recovered from the house and Officer D. Williams positively identified it as the one he RIVERA holding.

The subjects at 642 East E Street were identified as Francisco TOSCANO DOB: 083081, D. HERNANDEZ DOB: 122990, Giovanna Perez GOMEZ DOB: 111589, Raul PRIETO DOB: 103185, Jesus PRIETO DOB: 102588, Daniel NAVARRO DOB: 092687 and RIVERA.

On July 22, 2009, at approximately 1949 hrs, NAVARRO, TT #5, had an outgoing call to RIVERA on TT #9. During the conversation, RIVERA and NAVARRO greeted. NAVARRO asked what RIVERA was doing. RIVERA said they (Law enforcement) just put him through fucking hell with his kids and everything. NAVARRO said okay, it was true (NAVARRO was aware of law enforcements activities). NAVARRO said he found out already. RIVERA said

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| | 1. File No.<br>R1-08-0451 | 2. G-DEP Identifier<br>YGH1C |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 3. File Title<br>MISQUEZ, SARA | |
| 4.<br>Page 9 of 10 | | |
| 5. Program Code | 6. Date Prepared<br>07-23-2009 | |

yeah. NAVARRO asked if his number came up (possibly on caller i.d., NAVARRO blocked his number in attempt to hide from law enforcement detection). RIVERA said no, that was why he wanted to talk to him in person because he (RIVERA) did not want to let them down (NAVARRO and others within the Gang organization), doing something for them (The higher administration within the Gang organization). NAVARRO said yeah. RIVERA said everything was done right and then boom they (Law enforcement) hit that mother fucker (Possibly the residence) and they (Law enforcement) got that thing (Firearm). RIVERA asked if NAVARRO knew what he meant. NAVARRO said yeah. RIVERA told NAVARRO he would make that up (Possibly purchase another firearm for the Gang and stay in good terms with NAVARRO), because he (RIVERA) did not come through with anything. RIVERA said it was only half of it, though then asked if NAVARRO knew what he meant. NAVARRO said yeah. RIVERA said he was going to make that up not to trip about that (RIVERA is telling NAVARRO not to worry about the firearm). NAVARRO said they (RIVERA and NAVARRO) would talk more when they saw each other.
IVERA said it was crazy because they (Law enforcement) had both his boys (Associates) on the floor, that shit had him (RIVERA) mad. RIVERA said that was okay because nobody went to jail and everything was cool and that was what mattered. NAVARRO said yeah. NAVARRO said somebody called him that had passed by and saw RIVERA there. RIVERA said they (Law enforcement) had the Chopper, about 10 cops, and one could not even run to the backyard. NAVARRO asked if the Charger arrived (NAVARRO was gathering intelligence from RIVERA about law enforcement's activities at the scene). CARLOS said no, it did not get there, just a black and white (Police unit). NAVARRO asked if there was a Gang-B. RIVERA said there was one, a black and white but without a top light. NAVARRO said okay.

Based on my training and experience and knowledge of the investigation, TFO Kris Lavoie believes RIVERA apologized to NAVARRO for not obtaining the handgun for the criminal organization. RIVERA said he would attempt to obtain another handgun for the organization to please NAVARRO. RIVERA is below NAVARRO in the organization and RIVERA updates NAVARRO on law enforcement activities.

On July 22, 2009, at approximately 2107 hrs, RIVERA, TT #9, received an incoming call from an unidentified male (UM) on a Mexico telephone number, 52-665-653-2509. During the conversation, UM asked RIVERA how he was

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| **REPORT OF INVESTIGATION** | R1-08-0451 | YGH1C |
| *(Continuation)* | 3. File Title | |
| | MISQUEZ, SARA | |
| 4. Page 10 of 10 | | |
| 5. Program Code | 6. Date Prepared | |
| | 07-23-2009 | |

doing. RIVERA told UM that they (Law enforcement) just let him go. UM asked who? RIVERA said the cops. UM asked why. RIVERA said they raided the pad. UM asked what they (Law enforcement) said. RIVERA asked if UM remembered his Compadre (Godparent) Rob, fucking Crook. UM said yeah. RIVERA said he was with him (Crook) with a couple other friends on "E" Street and Campus at the "homies" pad (Gang member meeting location) and they raided it. RIVERA told UM that he had just gotten a little toy (Referring to a firearm) and they (Law enforcement) found it, but they (Law enforcement) could not get him (RIVERA) with it because he was outside the pad (Residence). UM said yeah.
RIVERA said he had just gotten that fucking strap 15 minutes before and they (Law enforcement) took it (Firearm). RIVERA said when they (Law enforcement) raided, he (RIVERA) walked into the house and stashed it (Firearm) in the refrigerator and that was where they (Law enforcement) found it (Firearm). RIVERA said it (Firearm) was brand new, it was a bad ass Colt, 38 (Caliber) the C (U/I) did not have any paper or nothing. RIVERA said they (Law enforcement) touched the gun, so he was thinking that the cops were probably going to keep that shit (Firearm). UM said yeah. UM told RIVERA to be careful anyway because they (Law enforcement) could still get a hold of his parole officer and go to his house.

Based on my training and experience and knowledge of the investigation, TFO Kris Lavoie believes RIVERA admitted possession of the handgun and he hid the handgun in the refrigerator of the residence to avoid law enforcement detection. RIVERA stated the address on E Street was a meeting location for the gang.

**INDEXING**

1. TORRES-CRUZ, Marco Antonio - NADDIS 6895672

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.