ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
REEMA M. EL-AMAMY (California State Bar Number 237743)
Assistant United States Attorney
Violent and Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0552
    Facsimile:  (213) 894-3713
    E-mail: reema.el-amamy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ) CR No. 10-351-ODW
                          )
          Plaintiff,      ) **GOVERNMENT'S OPPOSITION TO DEFENDANT
                          ) JESSICA MEDINA'S MOTION TO SUPPRESS
          v.              ) WIRETAP EVIDENCE; EXHIBITS**
                          )
ARMANDO BARAJAS, et al.,  )
                          )
          Defendants.     )
                          )
_____)

        Plaintiff United States of America, through its counsel of

record Assistant United States Attorney Reema M. El-Amamy, hereby

files its Opposition to Defendant Jessica Medina's Motion to

Suppress Wiretap Evidence.

//

//

//

1     The Government's Opposition is based on the attached

2  memorandum of points and authorities, the files and records in

3  this case, and any additional argument or evidence that it may

4  present at any hearing on this matter.

5

6  DATED: August 27, 2012

7

8                            Respectfully submitted,

ANDRÉ BIROTTE JR.
9                            United States Attorney

10                           ROBERT E. DUGDALE
Assistant United States Attorney
11                           Chief, Criminal Division

12

13                                  /s/

REEMA M. EL-AMAMY
14                           Assistant United States Attorney

15

16                           Attorneys for Plaintiff
United States of America

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   THE WIRETAP HAD DEPARTMENT OF JUSTICE AUTHORIZATION . 2

    B.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
        CONCLUDING THAT NECESSITY EXISTED FOR THE WIRETAP
        ORDER . . . . . . . . . . . . . . . . . . . . . . . 3

        1.   Necessity if Viewed in Light of the Goals of the
            Investigation . . . . . . . . . . . . . . . . . 6

        2.   The Affidavit Sufficiently Explained that
            Traditional Investigative Techniques Had Been
            Tried and Failed, Were Reasonably Unlikely to
            Succeed, Or Were Too Dangerous . . . . . . . . . 9

            a.   The Ability to Use Physical Surveillance
                Did Not Obviate Necessity . . . . . . . . 12

            b.   The Ability to Conduct a Trash Search Did
                Not Obviate Necessity . . . . . . . . . . 14

            c.   The Ability to Conduct a Parole Search Did
                Not Obviate Necessity . . . . . . . . . . 15

            d.   The Ability to Use a Pen Register or Trap
                and Trace Device or a GPS Order Did Not
                Obviate Necessity . . . . . . . . . . . . 17

    C.   THE ARREST OF DEFENDANT RIVERA DID NOT NEGATE THE
        PREVIOUS SHOWINGS OF PROBABLE CAUSE AND NECESSITY . 18

    D.   THE "GOOD FAITH" EXCEPTION TO THE EXCLUSIONARY RULE
        ALSO SUPPORTS THE DENIAL OF DEFENDANT'S WIRETAP
        MOTION . . . . . . . . . . . . . . . . . . . . . . 20

    E.   DEFENDANTS' REQUEST FOR A <u>FRANKS</u> HEARING SHOULD BE
        DENIED . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 25

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                               **Page (s)**

*United States v. Carneiro*,
    861 F.2d 1171 (9th Cir. 1988) . . . . . . . . . . . . . 6

*Franks v. Delaware*,
    438 U.S. 154 (1978) . . . . . . . . . . . . . . . . 23, 24

*United States v. Kahn*,
    415 U.S. 143 (1974) . . . . . . . . . . . . . . . . 19, 20

*United States v. Bailey*,
    607 F.2d 237 (9th Cir. 1979) . . . . . . . . . . . . . 7

*United States v. Baker*,
    589 F.2d 1008 (9th Cir. 1979) . . . . . . . . . . . . . 6

*United States v. Bennett*,
    219 F.3d 1117 (9th Cir. 2000) . . . . . . . . . . . . 6, 8

*United States v. Blackmon*,
    273 F.3d 1204 (9th Cir. 2001) . . . . . . . . . . . passim

*United states v. Brone*,
    792 F.2d 1504 (9th Cir. 1986) . . . . . . . . . . . passim

*United States v. Brown*,
    761 F.2d 1272 (9th Cir. 1985) . . . . . . . . . . . . . 12

*United States v. Butz*,
    982 F.2d 1378 (9th Cir. 1993) . . . . . . . . . . . . . 21

*United States v. Canales Gomez*,
    358 F.3d 1221 (9th Cir. 2004) . . . . . . . . . . . passim

*United States v. Collins*,
    61 F.3d 1379 (9th Cir. 1995) . . . . . . . . . . . . . 24

*United States v. Echavarria-Olarte*,
    904 F.2d 1391 (9th Cir. 1990) . . . . . . . . . . . . . 7

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) . . . . . . . . . . . . 5, 6

*United States v. Garcia-Villalba*,
    585 F.3d 1223 (9th Cir. 2009) . . . . . . . . . . . . . 11

*United States v. Gonzalez, Inc.*,
    412 F.3d 1102 (9th Cir. 2005) . . . . . . . . . . . . . 4

*United States v. Hammett*,
    236 F.3d 1054 (9th Cir.), 534 U.S. 836 (2001) . . . . . 24

ii

**TABLE OF AUTHORITIES (CONTINUED)**

**Page(s)**

United States v. Chan,
        2006 WL 1581946 (N.D. Cal. June 6, 2006) . . . . . . . .   22

United States v. Graham,
        2010 WL 2635772 (C.D. Cal. June 29, 2010)  . . . . . . .   24

United States v. Hermanek,
        289 F.3d 1076 (9th Cir. 2002)  . . . . . . . . . . . . 3, 19

United States v. Hove,
        848 F.2d 137 (9th Cir. 1998) . . . . . . . . . . . . . .   21

United States v. Ipplito,
        774 F.2d 1482 (9th Cir. 1985) . . . . . . . . . . . . .   23

United States v. Kail,
        612 F.2d 443 (9th Cir. 1979) . . . . . . . . . . . . .   12

United States v. Leon,
        468 U.S. 897 (1984)  . . . . . . . . . . . . . .   20, 21

United States v. Malekzadeh,
        855 F.2d 1492 (11th Cir. 1998) . . . . . . . . . . . .   21

United States v. Martinez,
        452 F.3d 1 (1st Cir. 2006) . . . . . . . . . . . . . .   10

United States v. McGuire,
        307 F.3d 1192 (9th Cir. 2002)  . . . . . . . . . . passim

United States v. Miller,
        753 F.2d 1475 (9th Cir. 1985) . . . . . . . . . . . . .   24

United States v. Moore,
        41 F.3d 370 (8th Cir. 1994)  . . . . . . . . . . . . .   21

United States v. Nunez,
        877 F.2d 1470 (10th Cir. 1989) . . . . . . . . . . . .   19

United States v. Perdomo,
        800 F.2d 916 (9th Cir. 1986) . . . . . . . . . . . . .   23

United States v. Reed,
        575 F.3d 900 (9th Cir. 2009) . . . . . . . . . . . passim

United States v. Rice,
        478 F.3d 704 (6th Cir. 2007) . . . . . . . . . . . . .   21

United States v. Ruddell,
        71 F.3d 331 (9th Cir. 1995)  . . . . . . . . . . . . .   25

iii

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

United States v. Sandoval,
     550 F.2d 427 (9th Cir. 1976) . . . . . . . . . . . . . . . 7

United States v. Smith,
     893 F.2d 1573 (9th Cir. 1990) . . . . . . . . . . . . . 5

United States v. Staves,
     383 F.3d 977 (9th Cir. 2004) . . . . . . . . . . . . passim

United States v. Torres,
     908 F.2d 1417 (9th Cir. 1990) . . . . . . . . . . . . 5, 7

United States v. Walker,
     2007 WL 2156372 (D. Or. July 26, 2007) . . . . . . . . . 24

United States v. Williams,
     737 F.2d 594 (7th Cir. 1984) . . . . . . . . . . . . . . 24


**FEDERAL STATUTES**

18 U.S.C. §§ 1962 . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 2518 . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 2518(1)(c) . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2518(3)(a) . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant Jessica Medina has filed a Motion to Suppress Wiretap Evidence derived from the interception of Target Telephone 9, whose interception was authorized on July 17, 2009, by the Honorable Manuel L. Real, United States District Judge, pursuant to an order in CR Misc. No. 09-0038(D)-R, and upon the sworn affidavit of Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Kris Lavoie.  Defendant Jessica Medina was the subscriber of Target Telephone 9, but was not named as a target in the application for wiretap authorization, and was only identified as a co-conspirator through the interception of telephone calls.  Defendant Raul Prieto has also joined in this motion.  He too was not named as a target in the application, but was also identified as a co-conspirator through intercepted telephone calls.  Those interceptions demonstrated that defendants Medina and Prieto were conspiring with defendant Rivera to participate in the crimes of the Black Angels gang.

Defendants argue: (1) the government failed to obtain authorization from the Department of Justice ("DOJ") to intercept defendant Rivera's communications; (2) the wiretap application failed to demonstrate the required necessity; and (3) once defendant Rivera, who was the primary user of Target Telephone 9, was arrested, the probable cause and necessity that had justified the wiretap ceased to exist.  Defendants also request a <u>Franks</u> hearing.

Defendants' arguments are unavailing, and the Motion and joinders should be denied in their entirety.  First, the wiretap

1

was properly authorized by the DOJ.  Second, as discussed below, the affidavit demonstrated that the requested wiretap authorization was necessary to meet the goals of the investigation, setting forth in detail the investigative steps taken thus far, their success or failure, and the limitations on using the specific investigative techniques.  Moreover, the fact that defendant Rivera was arrested at one point has no bearing on probable cause or necessity, as the wiretap authorization is made as to a particular phone, not a particular person, and the Ninth Circuit has explicitly approved action nearly identical to that taken in this case.  Furthermore, even if necessity was not demonstrated or probable cause and necessity ceased to exist at some point, the "good faith" exception applies and the wiretap evidence should not be suppressed.  Finally, defendants have not satisfied the heightened showing that is required for the Court to order a <u>Franks</u> hearing.

**ARGUMENT**

**A.   THE WIRETAP HAD DEPARTMENT OF JUSTICE AUTHORIZATION**

Defendant Prieto argues that the DOJ failed to authorize interception of defendant Rivera's communications.  This is false.  The government's application, affidavit, and proposed order all explicitly indicated that Target Telephone 9 was believed to be primarily used by defendant Rivera.  Furthermore, wiretap authority is tied "to specific communications facilities or locations," and "[a] cellular phone number is a 'communications facility.'" <u>United States v. Hermanek</u>, 289 F.3d 1076, 1086 & n. 3 (9th Cir. 2002).  The DOJ authorized the

2

1  interception of Target Telephone 9 on July 15, 2009.  See Ex. to
2  Def. Medina's Mot at USA000537.

3      Defendant Prieto suggests that, despite the fact that the
4  application, affidavit, and order, all of which were approved by
5  the DOJ, explicitly list defendant Rivera as the primary user of
6  Target Telephone 9, that DOJ authorized the interception of the
7  telephone with the caveat that the government was not authorized
8  to listen to defendant Rivera's calls.  This suggestion makes no
9  sense, and is not true.[1]

10     Finally, defendant takes issue with the timing of the
11  government's submission.  The application, affidavit, and order
12  were assigned to an DOJ Reviewer on July 10, 2009.  See El-Amamy
13  Decl. at ¶ 2.  On July 13, 2009, the Department of Justice
14  employee reviewed the application and order, and required only
15  "minor corrections."  Id.  The authorization was granted on July
16  15, 2009.  Id.

17  **B.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
         CONCLUDING THAT NECESSITY EXISTED FOR THE WIRETAP ORDER**

18      To obtain authorization for a wiretap, the government must
19  demonstrate both: (1) probable cause to believe that the Target
20  Subjects will use the target telephones to commit the listed
21  offense; and (2) that normal investigative techniques have been
22  tried and failed or reasonably appear unlikely to succeed or to
23  be too dangerous.  See 18 U.S.C. 2518(3)(a), 2518(3)(c), and
24

25      [1]  Defendants' reliance on United States v. Stafeldt, 451
26  F.3d 578 (9th Cir. 2006), is also misplaced.  That case examined
    an authorization memorandum that was submitted but related to an
27  entirely unrelated affidavit.  To the contrary, the Ninth
    Circuit's holding supports the proposition that the wiretap in
28  this case was facially sufficient.  Id. at 582.

1  2518(1)(c).  The "tried and failed" prong is just one of the
2  three prongs that make up necessity, along with "unlikely to
3  succeed" and "too dangerous."  The government can use any one of,
4  or a combination of each, to show necessity.  United States v.
5  Gonzalez, Inc., 412 F.3d 1102, 1112 (9th Cir. 2005) ("the
6  government may establish necessity for a wiretap by any of [the]
7  three, alternative methods.")  Defendants do no challenge the
8  affidavit's showing of probable cause.

9       The second requirement is generally described as the
10  "necessity requirement."  If a full and complete statement of
11  facts was submitted, then "[t]he issuing judge's decision that
12  the wiretap was necessary is reviewed under an abuse of
13  discretion standard."  United States v. Canales Gomez, 358 F.3d
14  1221, 1225 (9th Cir. 2004) (citing United States v. McGuire, 307
15  F.3d 1192, 1197 (9th Cir. 2002)).  Further," [t]he court
16  authorizing a wiretap has considerable discretion."  McGuire, 307
17  F.3d at 1196.  Courts have "adopted a 'common sense approach' in
18  which the reviewing court uses a standard of reasonableness to
19  evaluate the government's good faith effort to use alternative
20  investigative means or its failure to do so because of danger or
21  low probability of success."  Canales Gomez, 358 F.3d at 1225
22  (quoting United States v. Blackmon, 273 F.3d 1204, 1206 (9th Cir.
23  2001)).

24       Thus, the necessity requirement is not rigid and can be
25  satisfied by a showing that "ordinary investigative procedures,
26  employed in good faith, would likely be ineffective in the
27  particular case."  McGuire, 307 F.3d at 1196.  The purpose of the
28  necessity requirements is "to ensure that wiretapping is not

4

resorted to in situations where traditional investigative techniques would suffice to expose the crime." <u>Blackmon</u>, 273 F.3d at 1207. At the same time, wiretaps should not be the initial step in an investigation, yet law enforcement officers need not exhaust every possible investigative alternative before obtaining a wiretap. <u>McGuire</u>, 307 F.3d at 1196-97; <u>United States v. Fernandez</u>, 388 F.3d 1199, 1235-36 (9th Cir. 2004); <u>United States v. Smith</u>, 893 F.2d 1573, 1582 (9th Cir. 1990).

In addition, some "boilerplate" conclusions regarding traditional investigative techniques are permitted in wire affidavits. The Ninth Circuit has expressly held that "[t]he presence of conclusory language in [an] affidavit will not negate a finding of necessity if the affidavit, as a whole, alleges sufficient facts demonstrating necessity." <u>United States v. Torres</u>, 908 F.2d 1417, 1424 (9th Cir. 1990). In <u>Fernandez</u>, the Ninth Circuit rejected a challenge that an affidavit failed to demonstrate necessity because the sections on pen registers and trash searches included "statements that are 'nothing more than a description of the inherent limitations' of [those] particular investigative techniques." <u>Fernandez</u>, 388 F.3d at 1237, n.23 (quoting <u>Blackmon</u>, 273 F.3d at 1210).[2] The <u>Fernandez</u> court expressly held that despite the fact that the pen register and trash search sections of the affidavit contained nothing more than explanations of the limitations of those techniques, this would be true in most cases:

---

[2] Defendants do not acknowledge the Ninth Circuit's holding in <u>Fernandez</u> in asserting the purported importance of a trash search and a pen register in the instant case.

5

> In the end, however, we cannot conclude that the district court abused its discretion in finding that the Olsen affidavits satisfied the necessity requirement set out in 18 U.S.C. § 2518(1)(c).  This case is distinguishable from <u>Blackmon</u> because our holding in that case was premised on a finding that the affidavits supporting the wiretap applications were plagued by material misrepresentations and omissions.

<u>Fernandez</u>, 388 F.3d at 1237.

The asserted failure of normal investigative techniques must be viewed in a common sense fashion.  What is required is a showing that in the particular investigation "ordinary investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." <u>United States v. Bennett</u>, 219 F.3d 1117, 1122 (9th Cir. 2000) (citation omitted).  "The statute does not mandate the indiscriminate pursuit to the bitter end of every non-electronic device as to every telephone and principal in question to a point where the investigation becomes redundant or impractical or the subjects may be alerted and the entire investigation aborted by unreasonable insistence upon forlorn hope."  <u>United States v. Baker</u>, 589 F.2d 1008, 1013 (9th Cir. 1979).

    1.   <u>Necessity if Viewed in Light of the Goals of the Investigation</u>

The necessity for a wiretap must also be evaluated in relation to the goals of the overall investigation.  If normal investigative means cannot reveal the entire scope of the trafficking or racketeering enterprise, including leadership, roles of members and associates, sources of supply, customers, and details of operation, necessity for wiretapping has been demonstrated.  <u>McGuire</u>, 307 F.3d at 1197-98; <u>Torres</u>, 98 F.2d at 1422; <u>Carneiro</u>, 861 F.2d at 1178; <u>United States v. Bailey</u>, 607

6

F.2d 237, 242 (9th Cir. 1979).  Hence, when normal investigative procedures have been successful in developing evidence against only some of the key members of the targeted conspiracy, necessity for a wiretap still exists where the objective of the investigation is to discover the full scope of the illegal enterprise.  Canales-Gomez, 358 F.3d at 1226 (other techniques "could only have aided in the arrests of a limited number of those involved."); United States v. Echavarria-Olarte, 904 F.2d 1391, 1396 (9th Cir. 1990); Bailey, 607 F.2d at 242; United States v. Sandoval, 550 F.2d 427, 430 (9th  Cir. 1976).

Moreover, the government is entitled to more leeway in its investigative methods when it pursues a conspiracy.  McGuire, 307 F.3d at 1197-98.  In McGuire, the Ninth Circuit explained:

> Conspiracies pose other special dangers.  Unlike individual criminal action, which comes to an end upon the capture of the criminal, collective criminal action has a life of its own.  Like the Hydra of Greek mythology, the conspiracy may survive the destruction of its parts unless the conspiracy is completely destroyed.  For even if some or many conspirators are imprisoned, others may remain at large, free to recruit others eager to break the law and to pursue the conspiracy's illegal ends.  Reflecting on this concern, we have "consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of . . . other satellite conspirators."  Because the government has a duty to extirpate conspiracy beyond its duty to prevent the mere commission of specific substantive offenses, we conclude that the government is entitled to more leeway in its investigative methods when it pursues a conspiracy.

Id. (internal citations and footnotes omitted); Canales-Gomez, 358 F.3d at 1226 (same).  The investigation in this case, with its multiple targets both known and unknown, unknown sources of narcotics and firearms supply, unidentified leadership and organizational structure, unknown specific methods of operation,

7

1  and unknown scope of its racketeering activities, fits squarely

2  into the Ninth Circuit rationale in McGuire and Canales Gomez for

3  broad investigative goals.

4      In addition, the Ninth Circuit in McGuire also reaffirmed

5  its holding in Brone, 702 F.2d 1504, that a wiretap:

6      can be necessary if it gives the government the ability to
       "develop an effective case." By "an effective case" we
7      meant evidence of guilt beyond a reasonable doubt, not
       merely evidence sufficient to secure an indictment. . . .
8      The government's possession of evidence sufficient to indict
       some conspirators does not bar it from seeking evidence
9      against others.

10 McGuire, 307 F.3d at 1198 (citations omitted).

11     The Ninth Circuit has expressly held that "[t]hough

12 traditional methods has unearthed some preliminary information

13 regarding these matters, without the wiretaps the investigators

14 could not penetrate the inner workings of the drug conspiracy or

15 'obtain information about the extended organization, such as

16 other members, couriers, buyers and supplier.'" Canales Gomez,

17 358 F.3d at 1224-25 (quoting Bennett, 219 F.3d 1121).

18     As discussed in the affidavit, the focus of this

19 investigation was expansive - namely, targeting the extortion and

20 other criminal activities of the Black Angels criminal street

21 gang.  TFO Lavoie listed eleven different criminal offenses

22 including Racketeer Influenced and Corrupt Organizations ("RICO")

23 offense, in violation of 18 U.S.C. §§ 1962 and 1963; and

24 Conspiracy to distribute a controlled substance, in violation of

25 21 U.S.C. § 846.  See Def. Ex. at USA000549-550.  By July 2009,

26 thirteen pages of the affidavit were dedicated to identifying the

27 Target Subjects and describing their various roles in the

28 criminal enterprise.  Id. at USA000553-565.

8

Despite the investigation's scope, the government delineated clear and attainable goals.  <u>Id</u>. at USA000602-603.  These goals included identifying the narcotics traffickers being extorted by the Black Angels gang, and the management and disposition of proceeds generated by narcotics trafficking and money laundering; identifying the co-conspirators and the specific roles of individuals involved in narcotics distribution; locating the current locations being used by distributors for trafficking narcotics; and ascertaining the involvement of defendant Navarro and other members of the Black Angels gang in narcotics distribution and extortion activity.  <u>Id</u>.  These goals, when considered in conjunction with the description of traditional methods which had been tried at the time, demonstrated the wiretap was necessary within the meaning of 18 U.S.C. § 2518.

> 2.  <u>The Affidavit Sufficiently Explained that Traditional Investigative Techniques Had Been Tried and Failed, Were Reasonably Unlikely to Succeed, Or Were Too Dangerous</u>

Defendants contend that, other than offering up boilerplate statements, the government has failed to show that it had attempted to use normal investigative means which failed to achieve the investigation's objectives, and that the use of normal investigative techniques was unlikely to be successful or were too dangerous.  In support, defendants rely primarily on <u>Blackmon</u>, 273 F.3d 1204, 1207 (9th Cir. 2001).  <u>Blackmon</u> is distinguishable on several important grounds.  The affidavit in <u>Blackmon</u> had been developed for a different target, Maurice Miller, against whom charges were brought.  Thereafter, the FBI targeted Blackmon in a new, "spinoff" investigation, but without

9

1   making a showing of necessity to support the new investigation.

2   Instead, the FBI submitted the same affidavit which was

3   essentially an unchanged "carbon copy" of the affidavit used to

4   shown necessity as to Miller.  As a result, the evidence

5   regarding necessity, which implied that it related to Blackmon

6   but in fact related to Miller, contained serious material

7   misstatements and omissions.  Later cases have noted the

8   narrowness of the <u>Blackmon</u> decision.  <u>See, e.g., United States v.</u>

9   <u>Martinez</u>, 452 F.3d 1, 6 (1st Cir. 2006) (distinguishing <u>Blackmon</u>

10  on the ground that investigative objectives involving

11  interception of Blackmon's telephone, when omissions and

12  misstatements were removed from the affidavit, were not described

13  with any particularity).  As the <u>Blackmon</u> court noted, once the

14  affidavit was stripped of its misstatements and material

15  omissions, it was based entirely on 'boilerplate conclusions that

16  merely describe the inherent limitations of normal investigative

17  procedures."  273 F.3d at 1210.

18      The affidavit at issue does not suffer from that defect.

19  The necessity section, encompassing 23 pages of the supporting

20  affidavit, can hardly be described as nothing more than

21  boilerplate.  Rather, the necessity section along with the

22  remainder of the affidavit describes the expansive, but concrete

23  objectives of the investigation, which informs the Court's

24  assessment of the showing necessity.  <u>United States v. McGuire</u>,

25  307 F.3d 1192, 1197-98 (9th Cir. 2002).  The affidavit's

26  description accurately portrayed the government's focus and was

27  based on extensive law enforcement activity, and was not a

28

1    boilerplate assertion divorced from reality.  See United States
2    v. Garcia-Villalba, 585 F.3d 1223, 1229 (9th Cir. 2009).

3        To the extent that defendants claim that the showing as to a
4    particular investigative technique was insufficient, they are
5    mistaken.  The affidavit sufficiently explained that specific,
6    traditional techniques had either been tried or reasonably
7    appeared unlikely to succeed or be too dangerous.  Of note,
8    defendants challenge the affidavit's discussions of physical
9    surveillance, a parole search on defendant Rivera, pen
10   register/trap and trace, and GPS data.  Defendants ignore
11   discussion of investigators' use of prior wiretap interceptions,
12   interviews of witnesses and confidential sources, Grand Jury
13   subpoenas, grants of immunity, financial investigation, mail
14   covers, undercover agents, use of search warrants and seizures,
15   recorded jail calls, stationary video cameras, and tracking
16   devices.  Def. Ex. at USA000602-625.  Defendants thus concede
17   that the affidavit showed that these investigative techniques
18   were insufficient to meet the goals of the investigation.[3]

19

20

21

22

23    _____

24        [3] Defendant Prieto's necessity argument also is based on the
     inaccurate assertion that "the government was aware of only four
25   telephone calls to/from Target Telephone 9."  See Prieto Mot. at
     3.  Defendant Prieto, ignoring paragraph 22 of the affidavit,
26   which explicitly states that the affidavit "does not contain all
     of the facts known to this investigation," conflates the
27   telephone calls that the government used to support probable
     cause and attempts to assert that this is all the government
28   knew.  See Def. Ex. at USA000552.

                                11

a.   The Ability to Use Physical Surveillance Did Not Obviate Necessity

Defendants fault the government for failing to conduct additional physical surveillance on defendant Rivera.[4]  First, defendants' description of the government's efforts to conduct surveillance is somewhat misleading as defendants ignore other surveillance efforts targeting the Black Angels criminal conspiracy which were discussed in the affidavit and in prior affidavits, which were incorporated by reference.  See Def. Ex. at USA000548.  See also Gov. Ex. A–D.

Additionally, the Ninth Circuit has consistently observed that the inherent limitations of physical surveillance support a finding of necessity.  United States v. Brown, 761 F.2d 1272, 1276 (9th Cir. 1985) ("Physical surveillance had been employed, but had failed to provide conclusive evidence."); United States v. Kail, 612 F.2d 443, 447 (9th Cir. 1979) ("surveillance was generally unsuccessful in fully establishing the elements of the offense" in gambling case).  The court has also recognized that necessity for a wiretap existed despite the surveillance that had been conducted to date "because the organization used sophisticated counter-surveillance strategies[.]"  United States v. Staves, 383 F.3d 977, 982 (9th Cir. 2004).

Consistent with the observations of the Ninth Circuit, the affidavit extensively discussed in detail the limitations of

---

[4]  Neither defendant suggests the use of physical surveillance on either defendants Medina or Prieto would assist in accomplishing the goals of the investigation.  They also do not offer any suggestion regarding how law enforcement could target surveillance efforts in any meaningful way.

1  surveillance, and the reasons that physical surveillance, even

2  when successful, was not (without the use of a wiretap)

3  sufficient to meet the goals of the investigation.  _Id_. at

4  USA000613.  The affidavit set forth the fact that, in most

5  instances, absent wire monitoring, law enforcement would not know

6  where to locate the targets of the investigation or identify the

7  nature of any meeting.  _Id_.  As explained by TFO Lavoie in a

8  previous affidavit that was incorporated by reference, he was

9  aware, based on his training and experience, that prolonged

10  physical surveillance on target subjects would most likely be

11  noticed, causing them to either become more cautious in their

12  illegal activities, or to flee to avoid investigation and

13  prosecution.  _See_ Gov. Ex. A at USA000079-80.

14  While defendants Medina and Prieto argue that additional

15  surveillance should have been conducted on defendant Rivera,

16  neither defendant makes any effort to explain what law

17  enforcement officers would have seen, and how those observations

18  would have furthered the goals of the investigation to any

19  measurable degree.

20  Furthermore, defendants Medina and Prieto themselves

21  demonstrate that the requested wiretaps were necessary in that,

22  with surveillance alone and without wire interceptions, their

23  role in the organization and their criminal culpability would

24  have been difficult, if not impossible to ascertain.  That is,

25  neither defendant was listed as a target of the wiretap in the

26  application because they had not previously been known to be co-

27  conspirators involved in the subject offenses.  Indeed, only

28  through the use of wiretaps were their roles discovered.  _See_

13

1   Indictment, Count One, Overt Acts 100, 103, 104, and 106

2   (describing defendant Medina's conduct), and 99 (describing some

3   of defendant Prieto's conduct).  Thus, even with 24-hour

4   surveillance, the full scope of the conspiracy and the identity

5   of all conspirators or their particular roles in the crimes would

6   not likely have been known, nor would evidence of some of those

7   crimes have been gathered.  Defendants Medina and Prieto are both

8   prime examples of how the affidavit's discussion of the

9   limitations of physical surveillance was in fact accurate.  In

10  short, the affidavit demonstrated that the use of physical

11  surveillance alone had not been, and was not likely to become,

12  sufficient to meet the goals of the investigation.

13          b.   The Ability to Conduct a Trash Search Did Not
                 Obviate Necessity

14

15       Both defendants Medina and Prieto challenge TFO Lavoie's

16  statement regarding his ability to conduct a trash search.

17  However, both concede that, had a trash search been conducted, it

18  would not obviate the necessity for the wiretap as neither make

19  any suggestion as to what law enforcement officers would possibly

20  recover using that investigative technique.  While TFO Lavoie's

21  statement will be examined more fully below in the context of

22  defendant's request for a Franks hearing, it is apparent that

23  conducting a trash search of 815 North Vineyard Avenue would not

24  satisfy the goals of the investigation. TFO Lavoie explained that

25  trash searches provide only "limited assistance in accomplishing

26  the goals of the investigation." See Def. Ex. at USA000622.  TFO

27  Lavoie further explained that it was unlikely to find any

28  evidence in a trash receptacle that would satisfy the broad goals

14

of the investigation, including revealing evidence related to the criminal activities of defendants Medina or Prieto, or evidence related to the extortion activities of defendant Rivera and other members of the Black Angels gang.  Id.  Even assuming law enforcement officers would have been able to identify Carlos Rivera's trash - and, neither defendant has submitted any declaration stating that this could be done with any degree of success - anything found in the trash would have, at most, minimal impact on the goals of the investigation.  See, e.g., Fernandez, 388 F.3d at 1237, n.23.

> c.  The Ability to Conduct a Parole Search Did Not Obviate Necessity

TFO Lavoie's affidavit referenced the fact that defendant Rivera was or had been on parole.  See Def. Ex. at USA000611 (identifying defendant Rivera from photographs obtained in Parole LEADS, a computer system utilized to access parolee records).[5] Defendants argue that TFO Lavoie should have explicitly discussed the ability to conduct a parole search at the residential address that defendant Rivera reported to his parole officer, and that, the ability to conduct parole searches obviated the necessity for the wire interception.  Neither defendant make any suggestion regarding what could have been found during a parole search conducted on a random date and time, without the benefit of any wiretap interception identifying specific criminal activity, that

---

[5]  On August 26, 2012, after consulting with another law enforcement officer, TFO Lavoie learned that Parole LEADS lists both individuals on active parole as well as individuals whose parole was recently terminated.  See Lavoie Decl. at ¶ 7.

15

1  could have assisted in satisfying the goals of the investigation,
2  including identifying the roles of any of defendant Rivera's co-
3  conspirators.

4      The affidavit contained an extensive discussion about the
5  ability to conduct searches at various locations.  See Def. Ex.
6  at USA000617-20.  Though the sub-heading is entitled "Search
7  Warrants/Seizures," the discussion therein also referenced the
8  parole search of defendant Vasquez.  Id. at USA000618.  TFO
9  Lavoie explained that searches of locations jeopardized the
10 overall investigation by prematurely notifying members of the
11 conspiracy that they are being investigated by law enforcement.
12 Id. at USA000619.[6]  Furthermore, TFO Lavoie explained that
13 prematurely searching a location will likely alert the target
14 subjects of the current ongoing investigation, and would
15 potentially cause them to discontinue using the target
16 telephones.  Finally, TFO Lavoie explained that, through use of a
17 wire intercept, investigators can better direct searches without
18 jeopardizing the ongoing investigation.  Id.

19     Defendants give two examples of instances after the wiretap
20 was approved where TFO Lavoie used the wiretap of Target
21 Telephone 9 to conduct targeted searches of defendant Rivera -
22 once when law enforcement officers seized a firearm from the
23 defendant, and then again, on August 6, 2009, law enforcement
24 officers conducted a parole search and seized a large quantity of

25 _____

26    [6] The language in that portion of the affidavit explicitly
   discusses search warrants, but defendant Prieto attributes that
27 same concerns to parole searches in arguing that TFO Lavoie
   falsely suggested that a premature search would jeopardize the
28 investigation.  See Prieto Joinder at 5-6.

1    methamphetamine at the Vineyard address.   As demonstrated by the

2    discovery, TFO Lavoie used the intercepted calls to determine

3    when defendant Rivera was engaged in criminal activity, and was

4    able to coordinate law enforcement action with the timing of the

5    intercepted telephone calls.   Defendants make no argument that

6    the successful law enforcement actions could have been conducted

7    without the aid of the wire interception.   Defendants also do not

8    make any argument that law enforcement could have gathered any

9    evidence relating to the roles of defendant Rivera's co-

10   conspirators including defendants Medina and Prieto by conducting

11   a parole search, or evidence that would, to any measurable

12   degree, satisfy the goals of the investigation.[7]

13              d.   <u>The Ability to Use a Pen Register or Trap and
                     Trace Device or a GPS Order Did Not Obviate
14                   Necessity</u>

15
16        Defendant Prieto argues that TFO Lavoie should have obtained

17   a pen register or a trap and trace device for Target Telephone 9.

18   In making this argument, defendant makes no attempt to explain

19   how this would have furthered the goals of the investigation.

20   _____

21        [7]   Defendant Prieto also argues that, because defendant
     Rivera did not to discontinue using his telephone after law
22   enforcement seized a firearm from Rivera, TFO Lavoie's statement
     regarding the risk of conducting searches was false.   That
23   defendant Rivera recklessly chose to continue using his telephone
     despite having significant law enforcement contact does not
24   negate TFO Lavoie's statement about the risk that conducting
     searches create in jeopardizing a wiretap investigation.
25   Similarly, the fact that defendant Medina chose to continue using
     defendant Rivera's telephone to discuss criminal activities
26   despite the fact that law enforcement officers had just seized a
     significant quantity of narcotics from her residence shows only
27   that she chose not to exercise caution while engaging in criminal
     activity.
28

1   TFO Lavoie explained in detail the limited value of pen registers

2   and trap and trace devices.  See Def. Ex. at ISA000620-621.  See

3   also Gov. Ex. A at USA000088.  Like defendant Prieto, the

4   government is unable to determine how this investigative

5   technique would further the goals of the investigation to any

6   degree.  See also, Fernandez, 388 F.3d at 1237, n.23.

7        Defendant Prieto also argues that TFO Lavoie could have

8   sought an order authorizing GPS information on Target Telephone

9   9.  Such an order would have assisted law enforcement officers

10  locate defendant Rivera in order to conduct physical surveillance

11  of him.  However, the government has described at length the

12  limited extent physical surveillance alone would have assisted

13  law enforcement officers accomplish the goals of the

14  investigation, including obtaining evidence of the criminal

15  activities of defendants Medina and Prieto, and evidence related

16  to the extortion activities of defendant Rivera and other members

17  of the Black Angels gang.  See Section 2(a).

18  **C.   THE ARREST OF DEFENDANT RIVERA DID NOT NEGATE THE PREVIOUS
         SHOWINGS OF PROBABLE CAUSE AND NECESSITY**

19

20       On August 6, 2009, defendant Rivera, the primary user of

21  Target Telephone 9, was arrested.  Interception of Target

22  Telephone 9 continued, and defendant Medina was subsequently

23  intercepted using Target Telephone 9 in furtherance of the

24  Subject Offenses.  Defendant claims that interception should have

25

26

27

28

                                    18

1   stopped immediately upon the arrest of defendant Rivera.[8]  This

2   contention finds no support in the controlling case law.

3   Defendant relies heavily, indeed, exclusively, on <u>United States</u>

4   <u>v. Brone</u>, 792 F.2d 1504 (9th Cir. 1986), but that case is

5   inapposite.  In <u>Brone</u>, the Court held only that the interception

6   of calls on a second telephone required a separate application

7   and a proper showing of probable cause and necessity.  <u>Id</u>. at

8   1507.  But here, the interception was supported by a proper

9   showing, and there is no case that requires the cessation of

10  interception in circumstances such as those present in this case.

11  Indeed, the relevant Ninth Circuit precedent holds precisely the

12  opposite.  In <u>United States v. Reed</u>, 575 F.3d 900, 910 (9th Cir.

13  2009), a wiretap order had been obtained for a telephone believed

14  to be used primarily by defendant Reed.  In fact, it was used

15  primarily by a person named Terry Jackson.  Interception

16  continued and evidence developed from that interception provided

17  additional evidence of drug dealing.  Defendant moved to suppress

18  that evidence, and all evidence derived from the interceptions.

19  The motion was denied, and defendant appealed.  The Ninth Circuit

20  wrote:

21          Appellants argue that, once authorities discovered that
            TT10's primary user was Terry Jackson, they should have
22          immediately discontinued the wiretap.  They contend that to
            continue listening to Jackson's phone calls was akin to
23          getting a search warrant for one house, searching the wrong
            house, and then even after discovering that it is the wrong
24          house, continuing the search anyway.  We disagree with this
            analogy in light of the language of § 2518.
25

26  _____

27      [8] The government notes that defendant also makes an
    assertion that is unsupported by any affidavit or declaration in
28  that law enforcement officers somehow "delivered" the telephone
    to defendant Medina.  <u>See</u> Def. Mot. at 27.

19

Authorization for a wiretap is based on probable cause to believe that the telephone is being used to facilitate the commission of a crime, and the order need not name any particular person if such person is unknown. <u>See</u> § 2518(1)(b)(iv); <u>Kahn</u>, 415 U.S. at 157, 94 S. Ct. 977; <u>United States v. Nunez</u>, 877 F.2d 1470, 1473 n.1 (10th Cir. 1989).

We have previously stated that wiretap authority is tied "to specific communications facilities or locations," and "[a] cellular phone number is a 'communications facility.'" <u>Hermanek</u>, 289 F.3d at 1086 & n. 3.  Identification of individuals whose communications will be intercepted is only required "if known." § 2518(4)(a).  Interpreting this provision, the Supreme Court said, "Congress could not have intended that the authority to intercept must be limited to those conversations between a party named in the order and others, since at least in some cases, the order might not name any specific party at all." <u>Kahn</u>, 415 U.S. at 157, 94 S. Ct. 977.

575 F.3d at 910-11.

The relevant wiretap application indicated that Target Telephone 9 was "believed to be used <u>primarily</u> by Carlos Rivera," and presented evidence establishing probable cause to believe that the <u>target telephone</u> was being used "to facilitate and commit the Target Offenses."  Consistent with <u>Reed</u>, there was no obligation to cease interception merely because defendant Rivera had been taken into custody, and the issues of probable cause and necessity should not be analyzed on a "before and after arrest" basis.

**D.   THE "GOOD FAITH" EXCEPTION TO THE EXCLUSIONARY RULE ALSO SUPPORTS THE DENIAL OF DEFENDANT'S WIRETAP MOTION**

The relevant interception of wiretap communications in this instance was conducted based upon an order from Judge Real authorizing the interception.  Even assuming necessity was lacking for the challenged order, or that probable cause and necessity were somehow deficient following the arrest of defendant Rivera, the good faith exception to the exclusionary

20

1 rule applies in this case and independently supports the denial

2 of the motion to suppress.

3     In <u>United States v. Leon</u>, 468 U.S. 897 (1984), the Supreme

4 Court adopted the "good faith" doctrine, which permits law

5 enforcement officers to rely on the facial validity of search

6 warrants.  Suppression of evidence is not an appropriate remedy

7 when a search was based upon an apparently valid warrant which

8 was later determined to be flawed so long as the executing

9 officer had a reasonable basis for relying on the warrant's

10 validity.  <u>Id</u>. at 923.  The good faith doctrine has been applied

11 by the Ninth Circuit to wiretap cases.  <u>Reed</u>, 575 F.3d at 917

12 (suppression of wiretap "would not be warranted" where agents

13 failed to seal call data content from the telephone company

14 "because the Government acted in good faith"); <u>see also</u> <u>United</u>

15 <u>States v. Butz</u>, 982 F.2d 1378, 1383 (9th Cir. 1993) (wiretap

16 evidence should not be suppressed where officers relied in good

17 faith on then-existing law in obtaining pen registers).[9]

18 While an application that is patently deficient cannot support

19 the application of the good faith exception, the test for whether

20 the exception may apply is whether the affidavit was sufficient

21 to "create disagreement among thoughtful and competent judges as

22 to the existence of probable cause." <u>United States v. Hove</u>, 848

23 F.2d 137, 139 (9th Cir. 1998) (citing <u>Leon</u>).  Here, Judge Real

24

25     [9] The Eight Circuit and Eleventh Circuit have also each held

26 that the good faith exception applies to wiretap orders.  <u>See</u>
<u>United States v. Moore</u>, 41 F.3d 370, 376-77 (8th Cir. 1994);

27 <u>United States v. Malekzadeh</u>, 855 F.2d 1492, 1497 (11th Cir.
1998).  The Sixth Circuit has held that it does not.  <u>United</u>

28 <u>States v. Rice</u>, 478 F.3d 704, 713-14 (6th Cir. 2007).

1    agreed with the sufficiency of the showings made in the

2    challenged affidavit.  It follows then, that the affidavit was at

3    least sufficient to create disagreement among thoughtful and

4    competent judges as to the existence of probable cause and/or

5    necessity.  The rule of <u>Leon</u> should apply to wiretaps and even if

6    the showings in the challenged affidavit is now judged to have

7    been deficient, the agent was entitled to rely in good faith on

8    the order authorizing the wiretap.

9    **E.    DEFENDANTS' REQUEST FOR A <u>FRANKS</u> HEARING SHOULD BE DENIED**

10        Defendants claim that they are entitled to a <u>Franks</u> hearing

11   because of: (a) TFO Lavoie's statement regarding his ability to

12   conduct a trash search at the location; (b) TFO Lavoie's failure

13   to discuss his ability to conduct a parole search on defendant

14   Rivera; and (c) TFO Lavoie's suggestion that surveillance and

15   searches would not have been useful or would jeopardize the

16   investigation.[10]

17        The Supreme Court in <u>Franks v. Delaware</u> set out quite

18   formidable requirements for the preliminary showing that would

19   call for a <u>Franks</u> hearing.  Defendants' motion ignores those

20   requirements.  "A defendant seeking to challenge the truthfulness

21   of a wiretap affidavit must make 'a substantial preliminary

22   showing that a false statement knowingly and intentionally, or

23   with reckless disregard for the truth, was included by the

24

_____

25        [10]  With respect to the third category of statements,
     although styled as a <u>Franks</u> challenge, defendant Prieto really
26   just disagrees with Judge Real's necessity finding, and has not
     demonstrated that the government misstated or omitted material
27   information.  <u>See, e.g.</u>, <u>United States v. Chan</u>, 2006 WL 1581946
     at *11 (N.D. Cal. June 6, 2006).
28

1   affiant in the warrant affidavit, and if the allegedly false

2   statement is necessary to the finding of probable cause," then

3   suppression is warranted."  United States v. Chan, 2006 WL

4   1581946 (N.D. Cal. June 6, 2006) at *10 (quoting Franks v.

5   Delaware, 43 U.S. 154, 155-56 (1978)).  "The necessity

6   requirement of Title III is 'material to the issuance of a

7   wiretap order,' and thus is subject to a Franks analysis."  Id.

8   (quoting United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir.

9   1985)).

10      Under Franks, a defendant must meet five requirements in

11  order to obtain a hearing on alleged false statements or

12  omissions in an affidavit: (1) he must allege specifically which

13  portions of the affidavit are allegedly false or misleading due

14  to omissions; (2) he must contend that the false statements or

15  omissions were deliberately or recklessly made; (3) he must

16  present a detailed offer of proof, including affidavits, to

17  support his allegations; (4) he must challenge only the veracity

18  of the affiant; and (5) the challenged statements or omissions

19  must be necessary to find necessity.  See United States v.

20  Perdomo, 800 F.2d 916, 920 (9th Cir. 1986); Ippolito, 774 F.2d at

21  1484-85.

22      Only if a defendant makes a substantial preliminary showing

23  must a court hold a hearing to determine if any false statements

24  or omissions deliberately or recklessly made in the affidavit

25  were material to the district court's finding of necessity.  See

26  United States v. Ipplito, 774 F.2d at 1484-85; United States v.

27  Staves, 383 F.3d 977, 982 (9th Cir. 2004).  To have any

28  significant under Franks, any identified intentional falsehood

1  or omission must be material.  That is, "if, when material that
2  is the subject of the alleged falsity or reckless disregard is
3  set to one side [or the material that is the subject of the
4  alleged omission is included], there remains sufficient content
5  in the warrant affidavit to support a finding of probable cause
6  [or necessity], no hearing is required."  Franks, 438 U.S. at
7  171-72.

8       A defendant must further demonstrate that the task force
9  officer intentionally or recklessly made the false statement or
10 omission.  "Reckless" disregard for the truth in the Franks
11 context means that the affiant "in fact entertained serious doubt
12 as to the truth of his" allegations.  United States v. Williams,
13 737 F.2d at 602.  Allegations of negligence or innocent mistake
14 are insufficient to warrant a Franks hearing.  United States v.
15 Graham, 2010 WL 2635772 (C.D. Cal. June 29, 2010) at *4 (citing
16 United States v. Miller, 753 F.2d 1475, 1478 (9th Cir. 1985)).
17 See also United States v. Collins, 61 F. 3d 1379, 1384 (9th Cir.
18 1995) (same); United States v. Walker, 2007 WL 2156372 (D. Or.
19 July 26, 2007) at *1 ("'[M]isstatements resulting from negligence
20 or good faith mistakes will not invalidate an affidavit which on
21 its face establishes probable cause [or necessity]'") (quoting
22 United States v. Hammett, 236 F.3d 1054, 1058 (9th Cir.), cert.
23 denied, 534 U.S. 836 (2001)) .

24      Finally, the Supreme Court set out another specific
25 requirement for a sufficient substantial preliminary showing
26 under Franks.  "Affidavits or sworn or otherwise reliable
27 statements of witnesses should be furnished, or their absence
28 satisfactorily explained."  Franks, 438 U.S. at 171.  This is

24

1  part of the requirement of the substantial preliminary showing,
2  which is mandated "to prevent the misuse of a veracity hearing
3  for purposes of discovery or obstruction." <u>Franks</u>, 438 U.S. at
4  170.   In the context of <u>Franks</u> hearings, the Ninth Circuit made
5  clear that "[t]he lack of an affidavit or sworn statement
6  offering proof of deliberate falsehood, as required by <u>Franks</u>, is
7  enough in itself to defeat [defendants'] demand for an
8  evidentiary hearing." <u>United States v. Ruddell</u>, 71 F.3d 331, 334
9  (9th Cir. 1995).   Defendants' motion provide no affidavits, no
10  sworn statements of witnesses, and no otherwise reliable
11  statements of witnesses.   The only declaration provided are those
12  of the defendants in order to establish standing.   This lack of
13  affidavits is never explained, or addressed at all.

14       None of the three categories of statements or omissions
15  delineated above merit a <u>Franks</u> hearing.   Defendants are unable
16  to make any showing that TFO Lavoie acted in bad faith or with
17  reckless disregard for the truth.   There is also no evidence that
18  TFO Lavoie sought to conceal information from the Court as
19  information regarding defendant's address and Parole LEADS were
20  contained in the affidavit.   Finally, defendants have not – and
21  can not – make any showing that the information regarding the
22  ability to conduct a trash search or any omitted discussion
23  regarding a parole search were material to the finding of
24  necessity.

25                            **CONCLUSION**

26       For these reasons, the government respectfully requests that
27  the Court deny defendants' Motion and request for a <u>Franks</u>
28  hearing.